IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH FALMAN, III
79 MASSAPEAG SIDE RD
UNCASVILLE, CT 06382

      PLAINTIFF

      - VS. -

FORD MOTOR COMPANY           COMPLAINT AND JURY DEMAND
C/O CT CORPORATION SYSTEM, S/A
357 EAST CENTER ST., STE. 2 J
MANCHESTER, CT 06040-4471

      DEFENDANT

---

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury on all claims and issues.

**PRELIMINARY STATEMENT**

1.      This case is about a 2023 Ford Transit van modified by Ford to operate in off-road environments and to be suitable for "van life." Ford heavily advertised the vehicle to consumers on these bases and was, ultimately, unable to deliver on those promises which violated Connecticut consumer protection laws and breached implied and/or express warranties.

2.      This case involves claims asserted under the Magnuson Moss Warranty Act, the Connecticut Uniform Commercial Code, and the Connecticut Unfair Trade Practices Act.

3.   This case involves a defective Ford Transit Trail that was manufactured and/or distributed by Defendant Ford Motor Company, and warranted by Defendant Ford Motor Company.

4.   At all relevant times, Plaintiff Joseph Falman, III was a natural person and consumer and buyer within the meaning of applicable laws, and was a citizen of, a resident of, and domiciled in the State of Connecticut.

5.   At all relevant times, Defendant Ford Motor Company (hereinafter "Ford" or "Defendant") was a corporation, supplier and merchant who was authorized to do business and doing business in Connecticut and elsewhere and is a warrantor of the subject vehicle that Plaintiff acquired. Upon information and belief, Ford is a Delaware corporation with a principle place of business in the State of Michigan.

6.   This action is properly before This Court as there is a complete diversity of citizenship between all parties and the amount in controversy, excluding attorney fees and costs, exceeds $75,000.

7.   This action is further properly before this Court as there is a claim arising under a federal statute, the Magnuson-Moss Warranty Act (15 U.S.C. §2301 et seq.), the amount in controversy, excluding fees and costs exceeds $50,000, and the remainder of the claims arise out of a common nucleus of operative facts forming part of the same case or controversy.

8.   This Court has jurisdiction over Defendant because Defendant is a citizen of, a resident of, and domiciled in Michigan.

9.   Venue is proper under 28 U.S.C. §1391(b)(1) as Defendant is a resident of Wayne County, Michigan.

**FIRST CLAIM: BREACH OF WARRANTY AND/OR CONTRACT**

10. This case involves a defective 2023 Ford Transit Trail that Defendant warranted and contracted to warrant but which it was not able to comport the vehicle to the warranty within a reasonable number of chances or a reasonable amount of time and whose warranty and/or contract Defendant breached.

11. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

12. This claim is for breach of express warranty and/or implied warranty and/or breach of contract under Connecticut state law.

13. This litigation involves a certain 2023 Ford Transit Trail manufactured and/or distributed by Defendant which is identifiable by Vehicle Identification Number ("VIN") 1FTBW3UG1PKB96030 (hereinafter "the subject vehicle").

14. As a result of the above, and the allegations below, inter alia, Defendant breached its warranty and/or contract to the injury of Plaintiff, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

15. At all times relevant, Girard Ford was a supplier and merchant and an authorized representative and agent of Defendant. Girard Ford was authorized by Defendant to act for it in all respects related to warranty repair work performed or attempted on the subject vehicle. Plaintiff acquired the subject vehicle from Girard Ford, and Girard Ford performed warranty repairs on the subject vehicle.

16. On or about February 9, 2024, the parties entered into a consumer transaction, in that Plaintiff agreed to acquire from Girard Ford, and Girard Ford agreed to sell to Plaintiff, and Defendant contracted and/or agreed to warrant the subject

vehicle to be free from defects and/or that it would repair and/or replace any defect which it contracted and/or warranted against, and whose total cost was about $78,809.00 plus all applicable taxes and fees.

17. Said consumer transaction was financed, in whole or in part, by TD Bank NA.

18. Plaintiff acquired the subject vehicle, for his own personal use, in reliance on the existence of a written warranty and/or contract from Defendant and on advertising representations and/or warranties of Defendant.

19. The Ford Transit Trail is a modification by Ford of the traditional Ford Transit van.

20. The Ford Transit Trail is distinct from the traditional Ford Transit van due to its extensive modifications by Ford.

21. Among other things, the Ford Transit Trail has a modified body profile; increased ground clearance; larger wheel well clearance to incorporate the larger wheels intended by Ford; factory stock 30.5 in. diameter all terrain tires; a 2.75 inch increased track width; and increased suspension, all of which gives the Ford Transit Trail better stability/resistance to roll over and allows the Ford Transit Trail to be used off road.

22. Ford made these modifications to the subject vehicle prior to placing it into the stream of commerce and prior to Plaintiff's purchase of the subject vehicle.

23. Ford, in its advertising statements and marketing, heavily advertised this modified Transit Trail and its modifications and benefits to consumers rather than businesses.

24. Ford, through its agents, marketed the Ford Transit Trail to DIY builders to make

camper vans capable of off road or trail driving and stated, substantially, this modified Transit Trail was: (1) a "life truck" – not a work truck; (2) for lifestyle customers; and (3) the Transit was traditionally known for businesses but the Transit Trail was for people.

25. Ford marketing campaigns for the Transit Trail prominently featured "van life" social media influencers and actively targeted this demographic with this product.

26. As part of the consumer transaction involving the subject vehicle, Ford provided written warranties with the subject vehicle.

27. One of the written warranties was a 3 year/36,000 mile new vehicle limited warranty.

28. Ford, through its agents, advertising statements, and marketing, promised the Ford Transit Trail would be suitable for off-road driving due to, among other reasons, the Transit Trail's frame and body being designed to incorporate 30.5 inch off road tires without any additional modification; increased wheelbase/track width; increased suspension; and greater ground clearance. The larger tires were one of the main features of the Transit Trail and one of the primary driving factors for Plaintiff's purchase thereof.

29. Ford's statements created an implied warranty of merchantability that the subject vehicle would be suitable for off-road driving.

30. Alternatively, Ford's statements created an implied warranty of merchantability that the subject vehicle would be suitable for use with 30.5 inch off road tires.

31. The purpose of Defendant's warranty was (a) to get the subject vehicle fixed

within a reasonable amount of time and within a reasonable number of attempts if a defect arose, and (b) to give Plaintiff confidence in the reliability and quality of the subject vehicle, and (c) to give Plaintiff confidence in Defendant's representations about the subject and the Ford Transit Trail that Defendant designed and built, and (d) to give Plaintiff confidence in Defendant itself as a responsible company that lived up to its representations, its word, and its warranties.

32.   After acquiring the subject vehicle, Plaintiff discovered that it did not conform to the representations of Defendant inasmuch as it developed continuing malfunctions, defects and problems, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

33.   Plaintiff's vehicle does not comply with Ford's expressed and implied warranties because the 30.5 inch off road tires have insufficient clearance between the tires and wheel arch to safely perform a turning maneuver.

34.   Because of this, Plaintiff cannot use the vehicle for the purpose for which he bought it.

35.   To make matters worse, Ford currently has no fix for this issue and cannot conform the subject vehicle to Ford's written and expressed warranties.

36.   Further, upon information and belief of Plaintiff, in March 2024 – less than a month after Plaintiff's purchase of the subject vehicle, Ford cancelled all outstanding orders that were undelivered and placed a stop sale under a safety recall could be performed (which still does not exist). In other words, if the subject vehicle had been completed 1 month later, it never would have been

available for Plaintiff to purchase.

37. Upon information and belief of Plaintiff, Ford has discontinued production of the Ford Transit Trail.

38. The defects in the subject vehicle, which are substantial and existed in the materials and workmanship caused by Defendant.

39. In March 2025, Defendant announced it was refusing to comport the vehicle to the written warranties through NHTSA Recall 24V226 Recall Notice 24S21.

40. The Recall Notice announced that Defendant's "solution" to the safety defect involving the tires was to replace them with smaller tires not designed for off road purposes.

41. Ford's "solution" removes the ability for Plaintiff to use the vehicle for the purpose that it was sold – namely, an off-road capable Ford Transit with a Ford warranty. Further, the smaller tires are likely to provide less traction in snow, grass, and mud.

42. In all respects, Plaintiff substantially, if not completely, performed his obligations under the subject vehicle's warranty from Defendant and Defendant did not perform its obligations, as set forth herein above and below.

43. Instead of performing as represented, Defendant did not repair all defects in the subject vehicle once and for all time. In short, the defects were not repaired, Plaintiff lost all confidence in the reliability and quality of the subject vehicle, and Plaintiff lost all confidence in Defendant as a company.

44. As a result, Defendant breached its express and/or implied warranties and/or contract and committed one or more unfair and/or deceptive and/or

unconscionable acts and/or practices.

45.     As a result, Defendant's warranty and/or contract failed of its essential purpose and any limitations contained within the warranty and/or contract are null and void and Plaintiff is entitled to all applicable legal and equitable remedies in law.

46.     In addition, any limitations contained within the warranty and/or contract are null and void and without consideration and Plaintiff is entitled to all applicable legal and equitable remedies in law.

47.     Through its advertising and otherwise, Defendant represented that the Ford Transit Trails it built were fit for the purpose for which they were designed, that they are safe and suitable for their intended designed use, reliably operable for private transportation as well as off-road driving and Plaintiff acquired the subject vehicle in reliance upon the belief that Defendant possessed a high degree of manufacturing skill and judgment.

48.     Through its advertising and otherwise, Defendant represented that the Ford Transit Trails which it manufactured were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used as well as off-road driving, and Plaintiff relied on such, but the subject vehicle involved in this case was not, however, of merchantable quality, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

49.     The malfunctions and defects in the subject vehicle severely and substantially impaired its use and/or safety and/or value to Plaintiff, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

50.     Defendant's failure to adequately repair of the subject vehicle's defects has caused

Plaintiff to lose confidence in the reliability of the subject vehicle and in the ability of Defendant to repair the subject vehicle's defects in a manner that would permit the subject vehicle to drive off-road, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

51. Plaintiff provided Defendant and/or its authorized dealership with a reasonable amount of time to repair the subject vehicle but they have each neglected, failed, refused or otherwise been unable to do so within a reasonable amount of time or a reasonable number of attempts.

52. As a result of the above facts, Defendant breached its warranties and/or contract and/or advertising representations with respect to the subject vehicle.

53. One or more of the defects and malfunctions in the subject vehicle were covered under the terms of Defendant's warranties and/or contract, and Defendant failed to repair the subject vehicle, thereby diminishing the use and/or safety and/or value of the subject vehicle, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

54. Defendant and/or its authorized dealership had notices of the breaches of the warranty and/or contract and the defective condition of the subject vehicle within a reasonable time.

55. Plaintiff suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failure of Defendant's authorized representatives to repair or replace the subject vehicle or refund its price, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

56. By reason of the above, Defendant's conduct has also frustrated the purpose of the sales agreement and/or expressed and/or implied warranty which entitles Plaintiff to recision of the contract(s).

## SECOND CLAIM: MAGNUSON MOSS WARRANTY ACT

57. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

58. This claim is for breach of express and/or implied warranties and/or contract of warranties and/or Defendant's violation of its obligations under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et seq.

59. At all times relevant herein, Plaintiff was and is a consumer under 15 U.S.C. §2301.

60. At all times relevant herein, Defendant was and is a warrantor under 15 U.S.C. §2301.

61. At all times relevant herein, Defendant was and is a supplier under 15 U.S.C. §2301.

62. At all times relevant herein, Parties were involved in a consumer transaction.

63. The Ford Transit Trail is and always was a consumer product under 15 U.S.C. §2301.

64. The subject vehicle is and was a consumer product distributed in commerce under 15 U.S.C. §2301.

65. By operation of law, Defendant gave Plaintiff an implied warranty of fitness for a particular purpose and merchantability on the subject vehicle under the

Commercial Code.

66. Plaintiff specifically alleges that Defendant represented that the vehicles it built were fit for the purpose for which they were designed, that they are safe and suitable vehicles for their intended designed use, reliably operable for private transportation as well as off-road use, and Plaintiff acquired the subject vehicle in reliance upon the belief that Defendant possessed a high degree of manufacturing skill and judgment.

67. Plaintiff specifically alleges that Defendant represented that the Ford Transit Trail vehicles which it manufactured were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used.

68. In addition to the defects which plagued the subject vehicle and which Defendant failed to repair within a reasonable amount of time or within a reasonable opportunity to repair, or in some cases failed to repair at all, the subject vehicle was defective when built, defective when delivered to Defendant's authorized retail seller, and defective when delivered to Plaintiff.

69. Plaintiff specifically alleges that the subject vehicle involved in this case was not, however, of merchantable quality.

70. As a result of the above, among other things, Defendant has breached its obligations under the Magnuson Moss Warranty Act, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

71. As a result of the above, among other things, Defendant breached one or more of its warranties in violation of the Magnuson Moss Warranty Act and the applicable

Code of Federal Regulations.

72.   Plaintiffs suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the above.

### THIRD CLAIM: CONNECTICUT UNFAIR TRADE PRACTICES ACT

73.   The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

74.   This claim is for violation of the Connecticut Unfair Trade Practices Act (hereinafter sometimes "Consumer Act"), Conn. Gen. Stat. §42-110a et seq., by Defendant.

75.   Defendant violated the Magnuson Moss Warranty Act in one or more manners, and knew, or should have known that doing so would be unfair and/or deceptive and/or unconscionable to Plaintiff, and did it anyway, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

76.   Ford, through its Agents, advertising, and marketing, represented that the subject vehicle would have performance characteristics, accessories, uses, or benefits that it ultimately did not have.

77.   Ford did so by representing that the subject vehicle would have the ability to effectively operate in an off road environment and/or effectively operate with 30.5 inch off road tires.

78.   Ford represented that it extensively tested the vehicle in its off road outdoor testing facilities and should have easily discovered the lack of clearance between the tires and wheel arch.

79. Ford represented that it redesigned the wheel arch to incorporate the larger 30.5 inch off road tires.

80. Performing a turning maneuver is a basic function of a vehicle and should have been tested.

81. Ford knew or should have known that the vehicle was not able to safely perform turning maneuvers with the promised 30.5 inch off road tires.

82. Plaintiff was induced to purchase the subject vehicle based upon these false representations.

83. Ford represented that the subject vehicle would be of a particular standard, quality, style, or model.

84. Ford represented that the Transit Trail would be purpose built for off road capabilities which incorporated a larger 30.5 inch off road tire akin to custom built off road "van life" vans.

85. Ford represented that the Transit Trail had the advantage of being of similar quality, style, standard, and/or model as these custom built off road "van life" vans but were also fully covered by the Ford warranty.

86. The subject vehicle was not of a similar quality, style, standard, and/or model because it cannot perform the basic function of performing a turning maneuver without causing dangerous rubbing between the wheel arch and tire.

87. Plaintiff was induced to purchase the subject vehicle because he wanted a vehicle similar to those custom built off road "van life' vans that was also fully covered by the Ford warranty.

88. Ford knew or should have known that the vehicle was not of a similar quality,

style, standard, and/or model as the custom built off road "van life" vans and sold the subject vehicle anyway.

89. Ford represented that the Transit Trial had the specific price advantage of being of equal capability as custom built off road "van life" vans but being a better value since the entire vehicle would be covered under the Ford warranty if something happened.

90. The price to purchase a then new Transit and customize it to be suitable for off road purposes would have been less than the price of the Transit Trail.

91. A Transit suitable for off road purposes AND covered by the Ford warranty would have had a price advantage over a Transit suitable for off road purposes NOT covered by the Ford warranty.

92. Ford was very aware of this fact because it was a major point in the advertising for the Transit Trail.

93. Ford knew or should have known that it could not provide Plaintiff with a Transit suitable for off road purposes AND covered by the Ford warranty at an advantageous price point but placed the vehicle into the consumer market anyway.

94. Plaintiff was induced into purchasing the subject vehicle by this representation.

95. Ford knew at the time the consumer transaction was entered into of the inability of Plaintiff to receive a substantial benefit from the 2023 Ford Transit Trail as represented in it advertising and marketing.

96. Further, unbeknownst to Plaintiff, Ford installed a speed limiter into the subject vehicle that prevents the subject vehicle from exceeding 80 MPH. The speed

limiter substantially impairs the use, value, and/or safety of the subject vehicle as it prevents Plaintiff from accelerating in situations to avoid a collision, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

97. Ford knowingly made a misleading statement of opinion on which Plaintiff was likely to rely to Plaintiff's detriment.

98. Ford made representations, claims, and assertions of fact which would cause a reasonable consumer to believe that the Ford Transit Trail would be capable of safely performing a turning maneuver with 30.5 inch off road tires without causing harm to any part of the vehicle without a reasonable basis to do so.

99. Plaintiff was and is a reasonable consumer who believed that the Ford Transit Trail would be capable of performing a turning maneuver with 30.5 inch off road tires without causing harm to any part of the vehicle.

100. Ford represented that it extensively tested the Ford Transit Trail in a variety of conditions in its off road testing grounds.

101. Tires rubbing on the wheel arch would have been readily discoverable with even just a cursory amount of testing.

102. Ford either lied about the amount of testing performed or the capabilities of the Ford Transit Trail.

103. In either circumstance, Ford lacked a reasonable basis to claim that the Ford Transit Trail would be capable of safely performing a turning maneuver with 30.5 inch off road tires.

104. Ford knew or should have known it lacked a reasonable basis for its claims but still permitted the vehicle to enter the stream of commerce.

105. Plaintiff, a reasonable consumer, was induced by this representation to purchase the subject vehicle.

106. Ford used statements in its advertisement which created in the mind of a reasonable consumer a false impression as to a material aspect of the Transit Trail.

107. The ability to safely perform turning maneuvers with 30.5 inch off road tires is a material aspect of a vehicle advertised for off road use.

108. Ford stated that the Transit Trail was suitable for off road use with 30.5 inch off road tires in its advertisements.

109. This impression was false because the Transit Trail is unable to safely be utilized with 30.5 inch off road tires.

110. Ford knew or should have known the Transit Trail was unable to be utilized as advertised.

111. Plaintiff, a reasonable consumer, was induced by this false representation to purchase the subject vehicle.

112. Ford advertised that the Transit Trail was to be sold on specific terms and failed to make the Transit Trail available to be sold as advertised. Namely, that it would be suitable for off road use in its factory stock form akin to custom built off road "van life" vans with a Ford warranty.

113. The Transit Trail is not suitable for off road use in its factory stock form because the factory stock wheels do not have adequate clearance between it and the wheel arch to safely perform a turning maneuver.

114. Ford knew or should have known that the vehicles it did make available for sale

did not conform to the specified terms in its advertising.

115.   Ford made a false or misleading statement with respect to the consumer goods, and that is unfair and/or deceptive and/or unconscionable to Plaintiff.

116.   Ford stalled, delayed, and avoided or attempted to avoid a legal obligation to repair the subject vehicle in a manner that would still permit the vehicle to be used off-road, with no valid legal defense, and that is unfair and/or deceptive and/or unconscionable to Plaintiff.

117.   Ford failed to disclose that the vehicle it was selling was unsafe, and that is unfair and/or deceptive and/or unconscionable to Plaintiff.

118.   Ford failed to comply with a statutory duty enacted to protect consumers, and that is unfair and/or deceptive and/or unconscionable to Plaintiff.

119.   Defendant breached and/or failed to honor its express and/or implied warranties to Plaintiff, and had a legal obligation to Plaintiff with no valid legal defense for not performing those obligations, but avoided, or attempted to avoid, one or more of its obligations.  Defendant knew, or should have known, that doing so would be unfair and/or deceptive and/or unconscionable to Plaintiff, but did it anyway, and that was unfair and/or deceptive and/or unconscionable to Plaintiff.

120.   The Motor Vehicle Safety Act, 49 U.S.C. §30101, et seq., requires certain defects to be disclosed to consumers, among other things.

121.   The defect in the subject vehicle was one such defect.

122.   The Motor Vehicle Safety Act also requires manufacturers to remedy the defect by either repairing the vehicle, replacing the vehicle, or refunding the purchase price of the vehicle with the manufacturer able to decide the remedy.

123. By its conduct, Ford elected to repair the defect.

124. The Motor Vehicle Safety Act requires that, if the manufacturer elects repairs, the repairs are to be adequately done and within a reasonable amount of time or else the manufacturer is required to replace the vehicle or refund the purchase price.

125. Ford's "repair" is neither adequate, since it deprives the vehicle of one of it's main features, nor was it implemented in a reasonable amount of time.

126. Since the announcement of the repairs, Plaintiff has notified Ford of the inadequacy of the repairs, and the desire of a replacement or refunding of the purchase price through a written letter dated May 27, 2025.

127. To date, Ford has not adequately repaired the defect in a timely manner, replaced the vehicle, or refunded the purchase price in violation of the Motor Vehicle Safety Act.

128. In failing to comply with the express remedies of the Motor Vehicle Safety Act after receiving notice of its failure, Ford has violated the Consumer Act.

129. As a result of the above, inter alia, Defendant committed one or more unfair or deceptive acts or practices in violation of the Consumer Act, before, during, or after a consumer transaction between Plaintiff and a supplier in relation to the subject vehicle.

130. As a direct and proximate result thereof, Plaintiff suffered actual ascertainable damages for which Defendant is liable.

**WHEREFORE**, judgment is demanded against Defendant as deemed proper and lawful by the Court, alternatively as follows:

## PRAYER FOR RELIEF

1.  On the first claim, breach of warranty and/or contract, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial.

2.  On the second claim, violation of the Magnuson Moss Warranty Act, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial.

3.  On the third claim, violation of the Connecticut Unfair Trade Practices Act, actual damages, punitive damages, and other damages, remedies, and equitable relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial.

## ALTERNATIVE PRAYER FOR RELIEF

Or, in the alternative to the damages set forth in the prayer above,

1.  On the first claim, remedies and relief as deemed proper and lawful by the Court under the Connecticut UCC;

2. On the second claim, rescission under the Magnuson Moss Warranty Act and damages under the Connecticut Commercial Code;

3. On the third claim, statutory rescission under the Consumer Act;

**Plus** on each and every claim, expenses of suit and litigation, interest from the date the contract was consummated, and an Order finding Plaintiff to have rescinded the transaction and/or to have revoked acceptance, reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Plaintiff demands trial by jury on all claims and issues.

Respectfully submitted,

/s/ Elizabeth Wells
ELIZABETH AHERN WELLS
BURDGE & WELLS LAW OFFICE
Counsel for Plaintiff
8250 Washington Village Drive
Dayton, Ohio 45458-1850
Telephone:    937.432.9500
Facsimile:     937.432.9503
Email:           Beth@BurdgeLaw.com

Z:\data\Falman, Joseph\Core Pleadings\Core Complaint 032326 bw.wpd